IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | |
|---|---|
| **MID-SOUTH OUTLET SHOPS, LLC** c/o **TANGER MANAGEMENT, LLC** | **PLAINTIFF/COUNTER-DEFENDANT** |
| V. | CIVIL ACTION NO. 3:21-CV-256-MPM-JMV |
| **C70 BUILDERS, INC.** | **DEFENDANT/COUNTER-PLAINTIFF** |
| V. | |
| **ABG CAULKING CONTRACTORS, INC., and ARTISTIC HARDSCAPES** | **THIRD-PARTY DEFENDANTS** |

**ORDER DENYING DEFENDANT'S MOTION TO STRIKE REPORTS AND TESTIMONY OF JEFFREY MASON**

This matter is before the Court on Defendant/Counter-Plaintiff C70 Builders, Inc.'s ("C70") Motion to Strike Reports and Testimony of Jeffrey Mason [171], the designated expert of Plaintiff Mid-South Outlet Shops, LLC c/o Tanger Management, LLC ("Tanger") for the reason that his disclosures as an expert witness are insufficient under Rule 26 of the Federal Rules of Civil Procedure and on the basis of "… the prejudicial impact of allowing him to testify without C70 having had an opportunity to depose him prior to the September 13, 2024 deadline for the filing of *Daubert* and dispositive motions." For all of the reasons discussed below, I find the motion is without merit and denied in its entirety.[1]

**Background and Procedural History**

By way of background, in 2015, C70 contracted with Tanger for the construction of the

---

[1] Though not a challenge to his designation as an expert witness, C70 apparently also seeks by this motion to exclude Mason from testifying at the trial of this matter as a lay witness on the grounds that "his knowledge is too specialized and technical" to qualify as that of a lay witness under FRE 701. To the extent C70 asserts the same as a challenge to the adequacy of Mason's disclosure as an expert witness pursuant to Fed. R. Civ. P. 26, it is denied in accord with the opinion set forth herein. Otherwise, C70 is directed to address any issue of the witness's proposed testimony at trial as a lay witness with the trial judge.

1

Tanger Outlets Southaven, an open-air mall in Southaven, Mississippi. The Mall opened in November 2015. According to C70, the first design modifications were subsequently installed at several buildings on the Project by C70 pursuant change orders under the Original Contract, and at other buildings by a different contractor retained separately by Tanger (these first modifications were named the "VF Fix"). Beginning in 2019, other agencies and consultants were retained by both Tanger and C70 to help identify the source and propose remedial action for ongoing water intrusion issues. These remediation efforts also included the execution of a second contract in February 2020 between C70 and Tanger for C70 to install additional modified waterproofing designs (the "Pier Replacement Contract").

In August 2021, Tanger retained Jeffrey Mason, and his company, WGI, Inc. ("WGI"), to review all pertinent documents related to the construction for the project including subsequent reviews, repairs and drawings created after the retail buildings were completed. This review was to be done to provide ownership with WGI's evaluation of these documents and to direct ownership on next steps based on the findings. In connection with this review, WGI was to prepare a written report summarizing its findings of the construction documents, initial construction of the buildings, subsequent reviews, tests, and previous repairs with photographs of representative conditions, an estimate of probable construction costs, and recommendation of how to proceed concerning warranties and deadlines for litigation. WGI generated a "Façade Due Diligence Report" bearing Mr. Mason's name on November 16, 2021 (the "First WGI Report).

Tanger filed the instant lawsuit on November 17, 2021, one day after the date of the First WGI Report. C70 removed [1] the case to this Court on December 21, 2021. In its Complaint [2], Tanger advances claims for breach of contract and negligence, alleging that there have been "numerous incidents of defective construction, some of which have caused substantial water

2

infiltration" throughout the Site. According to C70, these allegations are taken almost verbatim from the executive summary of the First WGI Report.

On February 22, 2022, a Case Management Order [15] was entered making discovery due by December 22, 2022; Amendments/Joinder of Parties due by June 6, 2022; Plaintiff's Designation of Experts due by September 1, 2022; Defendant's Designation of Experts due by October 24, 2022; and Motions (Dispositive and Daubert) were due by February 24, 2023. A Jury Trial was set for September 11, 2023.

On September 13, 2022, a Joint Motion to Dismiss and to Compel Arbitration [71] was filed by Spec 7 Group, LLC, and EMB Quality Masonry, LLC, resulting in a stay [74] of the case pursuant to L.U. Civ. R. 16(b)(3)(B), and a continuance of the existing trial date until June 3, 2024 [81].

While the case remained stayed, WGI provided a report titled "Repair Observation Report" dated January 19, 2023, bearing Mr. Mason's name, which stated that it was a supplement to the First WGI Report (the "Second WGI Report"). The Second WGI Report stated that it would address the as-built construction exposed during the repair project and compare those conditions to the expectations from the construction documents and standard construction practices.

On April 20, 2023, an Order [86] granting the motion to dismiss and to compel arbitration as to certain third-party defendants was entered, Spec 7 Group, LLC, and EMB Quality Masonry, LLC were dismissed from the case, and the stay was lifted [88]. A supplemental scheduling order [92] was entered on May 2, 2023, pursuant to which discovery was due by January 3, 2024, Amendments/Joinder of Parties due by May 22, 2023, Plaintiff's Designation of Experts due by October 3, 2023, Defendant's Designation of Experts due by November 3, 2023, and Daubert and Dispositive Motions were due by February 5, 2024.

On October 3, 2023, its expert designation date, Tanger served its Expert Designations ("Original Expert Designations") [102], identifying Tony R. Clark and Jeffrey P. Mason as Tanger's expert witnesses. The next day, Tanger served its Supplemental and Amended Expert Designations ("Amended Expert Designations") [103], which supplemented certain exhibits that Tanger averred were unavailable at the time the Original Expert Designations were served. The Second WGI Report was attached, together with the First WGI Report, as "Collective Exhibit A" to Tanger's Original Expert Designations, "Collective Exhibit B" to Tanger's Amended Expert Designations. With respect to Mr. Mason, Tanger provided the following description in the Original Expert Designations and Amended Designations:

Jeffrey P. Mason, AIA, Senior Project Manager, WGI, Inc., 2001 Butterfield Road, Suite 410, Downers Grove, Illinois 60515, (630) 307-3800. A copy of his Façade Due Diligence Report dated November 16, 2021, and Repair Observation Report dated January 19, 2023, which have been previously produced, are attached hereto as [Collective Exhibit A to the Original Expert Designations and Collective Exhibit B to the Amended Expert Designations].

> Mr. Mason may be called upon to offer opinions and testimony about the causation of the moisture intrusion issues, the opinions and findings listed in the attached reports, including the areas of the as-built construction requiring additional repairs as a result of poor construction practices. Mr. Mason's opinions are expected to be based on his background, training, and education, his review of the construction documents and materials, including photographs, his site inspections, and standard construction practices. Tanger remitted two separate payments to WGI (sic) for the reports attached at [Collective Exhibit A to the Original Expert Designations and Collective Exhibit B to the Amended Expert Designations], with said payments including an evaluation of necessary remediation. Specifically, Tanger remitted a payment to WGI (sic) in the amount of $74,300.00 for Phase I of the study of the premises, and Tanger remitted a payment of $50,500.00 for Phase II of the study of the premises. As of the time of this disclosure, no other compensation structure is currently in place with Mr. Mason, but Tanger will supplement this disclosure in the event this changes. Mr. Mason is not retained or specially employed to provide expert testimony but is being listed in an abundance of caution pursuant to Fed. R. Civ. P. 26(a)(2).

4

Tanger included Mr. Mason's curriculum vitae as Exhibit C to the Amended Expert Designations.

On the same date as Plaintiff's original expert designation (October 3, 2023), Tanger and C70 jointly moved to continue the trial date [100] and separately the CMO deadlines [101], representing therein that "the parties have been engaging in efforts to resolve this matter, and there are many outstanding discovery issues to be resolved before the parties can exchange expert reports and discovery completed. Indeed, the project at issue in this dispute spanned several years, such that hundreds of thousands of pages documents are subject to production …" [101] at 2.

Tanger and C70 represented in the respective motions that neither "would be prejudiced by the requested relief." [100] at 2; [101] at 3. However, the remaining defendants vigorously opposed the motions to continue. Nevertheless, on November 14, 2023, the district judge continued [128] the trial date to January 13, 2025, and the undersigned correspondingly extended the existing scheduling deadlines [130] as follows: Discovery due by June 4, 2024; Plaintiffs' Designation of Experts due by March 4, 2024; Defendants' Designation of Experts due by April 4, 2024l; and Dispositive and Daubert motions due by July 3, 2024.

Just prior to these extensions being made, WGI generated a third report dated October 23, 2023, and titled "Phase II Repair Follow Up Report" (the "Third WGI Report"). Like the Second WGI Report, the Third WGI Report recites it is a supplement to the First WGI Report, but the Third WGI Report, unlike both the First WGI Report and the Second WGI Report, bears not only Mr. Mason's name but his signature.

On March 4, 2024, Tanger filed its Second Supplemental and Amended Expert Designation ("Second Expert Designations") [135]. Tanger again listed Mr. Mason as an expert and provided the following summary:

5

>Jeffrey P. Mason, AIA, Senior Project Manager, WGI, Inc., 2001 Butterfield Road, Suite 410, Downers Grove, Illinois 60515, (630) 307-3800. A copy of his Façade Due Diligence Report dated November 16, 2021, and Repair Observation Report dated January 19, 2023, both of which have been previously produced, are attached hereto as Collective Exhibit C.
>
>Mr. Mason may be called upon to offer opinions and testimony about the causation of the moisture intrusion issues, the opinions and findings listed in the attached reports, including the areas of the as-built construction requiring additional repairs as a result of poor construction practices. Mr. Mason's opinions are expected to be based on his background, training, and education, his review of the construction documents and materials, including photographs, his site inspections, and standard construction practices. Tanger remitted two separate payments to WGI (sic) for the reports attached at Collective Exhibit C, with said payments including an evaluation and assessment of necessary remediation. Specifically, Tanger remitted a payment to WGI (sic) in the amount of $74,300.00 for Phase I of the study of the premises, and Tanger remitted a payment of $50,500.00 for Phase II of the study of the premises. As of the time of this disclosure, no other compensation structure is currently in place with Mr. Mason, but Tanger will supplement this disclosure in the event this changes. Mr. Mason is not retained or specially employed to provide expert testimony but is being listed in an abundance of caution pursuant to Fed. R. Civ. P. 26(a)(2). A copy of Mr. Mason's curriculum vitae is attached hereto as Exhibit D.

Tanger did not attach the Third WGI Report to its Second Expert Designations, and the amounts allegedly paid to WGI remain unchanged from the Amended Expert Designations despite Tanger apparently paying WGI $8,500 for WGI to generate the Third WGI Report. C70 was unaware of the existence of the third WGI report until May 13, 2024, when, during preparation for a witness's deposition, and it was then produced by Tanger, six (6) days after its expert designation deadline. According to Tanger's counsel, he mistakenly believed he had already produced all three expert reports. The error was due, according to counsel, to the cover page of Mason's third expert report being incorrectly dated January 19, 2023, which is the same date of the Repair Observation Report inadvertently produced instead of the third report. The error was apparently recognized in a discussion between all counsel during a deposition of another witness taken on or about May 14, 2023, and the report was available to C70 without complaint being made for over two months

before C70's expert, Lee Connell, submitted his July 29, 2024, "Supplemental Report" two weeks prior to his August 13, 2024, deposition.

At or around the same date that the Mason Third WGI Report was produced to C70 in May of 2024, Mason communicated to Tanger's counsel that his doctor had prohibited him from performing any work (including acting as an expert) until October 2024. It is undisputed that counsel for Tanger made all counsel aware, and on May 16, 2024, the parties jointly filed an unopposed motion to continue the trial date [146] and separately to continue the CMO deadlines [148].

They asserted in support that because Mason, Tanger's expert, was undergoing treatment for a serious medical condition and was physically unable to appear for a deposition until October 2024, they would need to extend the discovery deadline and corresponding Daubert and dispositive motions deadlines, and in their joint motion to continue CMO deadlines, the parties requested that should the district court judge deny their motion to continue the existing January 2025 trial deadline, the undersigned continue the discovery and dispositive/Daubert deadlines to the maximum allowed consistent with the court's 4-month rule.[2] In both Joint Motions, the movants asserted that no party would be prejudiced by the relief requested. On May 30, 2024, the district judge denied [149] the motion to continue the trial date, and the undersigned entered an order granting [150] the motion to continue the discovery and motions deadlines consistent with the existing trial setting so that discovery was due by August 13, 2024, and dispositive and Daubert motions were due by September 13, 2024.

In or around early September 2024 when, as the parties had anticipated, it was learned Mason would return to work in October and be available to sit for a deposition, Tanger's counsel

---

[2] The four-month rule requires that the Court maintain at least four months between the dispositive motions deadline and the trial date.

7

emailed counsel for Defendants asking for dates they might be available to do so. Opposing counsel apparently did not respond, and instead, on September 11, 2024, a month after the discovery deadline had run and two days before the dispositive and Daubert motions deadline, C70 filed the instant motion to strike Mason [171] on the basis that his expert designations were insufficient either as a retained or a non-retained expert. In addition, as earlier noted, C70 also sought to exclude Mason as a fact witness at trial on the basis that it is not proper lay witness testimony under F.R.E. 701 because it is technical in nature. As for the assertion that the designations of Mason as an expert are not sufficient, C70 argues that the timing of Mr. Mason's engagement and the nature of his work align with that of a retained expert. [172] at 14. Accordingly, C70 argues that he should have been required to produce a complete and detailed written report. *Id.* In addition to the First WGI Report and Second WGI Report, which though naming Mr. Mason, do not bear his actual signature, C70 also argues Tanger's failure to produce the Third WGI Report until May 14, 2024, seventy-one days after the March 4, 2024, deadline to do so, and assertedly without identifying any exhibits that would be used to summarize or support the opinions therein and without a statement about the compensation to be paid for that study and testimony in the case makes the disclosures insufficient pursuant to Fed. R. Civ. P. 26(a)(2)(B). [172] at 15.

In addition, C70 complains that the disclosures lack a complete statement of all opinions and the basis and reasons for them. It cites as illustrative thereof that "the WGI Reports make the conclusory statement that the water intrusions being experienced at the project site are due to 'poor construction practices' while simultaneously dismissing the possibility that the acknowledged lack of detail in Dorsky's drawings could be the cause of the water intrusions without articulating the underlying basis for that opinion." [172] at 15-16.

8

According to C70, this is "particularly damning considering the limitation language in the Second WGI Report and Third WGI Report, which states that this report does not imply that the repairs that have been addressed in this report will resolve all of the moisture infiltration issues for the property." [172] at 16. Finally, C70 also asserts the WGI Reports list various documents that Mason/WGI reviewed (e.g., architectural drawings, contracts) but fail to provide a detailed summary or analysis of the specific facts or data from those documents that were considered by Mason in forming any of the opinions in the reports and that neither the WGI Reports nor Mr. Mason's curriculum vitae contain a list of publications for the past ten years or any prior testimony in other cases within the last four years.[3] [172] at 16-17.

In advancing its 27-page memo offered in support of its motion to strike, C70 quotes at length from both Fed. R. Civ. P. 26 and L.U. Civ. R. 26,[4] and concludes stating, "Fed. R. Civ. P. 37(c)(1) provides for the exclusion of any information not provided as required by Rule 26(a); and its penalties are "automatic and mandatory" unless the sanctioned party can show that its violation of Rule 26(a) was substantially justified or harmless." [172] at 20. C70 also correctly points out that in evaluating whether a violation of Rule 26 is harmless, the Fifth Circuit has held that district

---

[3] In the alternative, C70 argues that Mason's Testimony should be stricken even if he is considered a non-retained expert under Rule 26(a)(2)(C) since that rule requires that a party disclosing such an expert must provide a summary of the subject matter of the witness's expected testimony and a summary of the facts and opinions to which the witness will testify, while Mr. Mason's disclosure only recites that "he may offer opinions and testimony about the causation of the moisture intrusion issues, the opinions and findings listed in the attached reports, including the areas of the as-built construction requiring additional repairs as a result of poor construction practices. Mr. Mason's opinions are expected to be based on his background, training, and education, his review of the construction documents and materials, including photographs, his site inspections, and standard construction practices." [172] at 17-18.

[4] "Federal Rule of Civil Procedure ("FRCP") 26(a)(2) contains requirements governing a party's disclosure/designation of expert witnesses. Its purpose is to provide notice to the other party of the expected testimony and opinions of the expert witness and eliminate unfair surprise to the other party. In addition to the requirements imposed by the Federal Rules, Local Uniform Civil Rule 26(a)(2) dictates that a 'party must make full and complete [expert] disclosure as required by Fed. R. Civ. P. 26(a)(2) and L.U. Civ. R. 26(a)(2)(D) no later than the time specified in the case management order...Absent a finding of just cause, failure to make full expert disclosures by the expert designation deadline is grounds for prohibiting the introduction of that evidence at trial.' 'An attempt to designate an expert without providing full disclosure information . . . will not be considered a timely expert designation and may be stricken upon proper motion or *sua sponte* by the court.' [172] at 9.

courts are to consider: (1) the importance of the evidence; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility for curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to comply with the disclosure requirements. [172] at 20-21, citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

Then, in what is best described as a generally conclusory fashion, C70 insists that these factors mandate an exclusion of Mason as an expert witness, retained or otherwise.[5]

By way of response in opposition to the motion to strike [195], Tanger relies upon L.U. Civ. R. 26(a)(3), which states:

> Failure to Disclose. If a party fails to make a disclosure required by [Local Rule 26], any other party must move to compel disclosure and for appropriate sanctions under Fed. R. Civ. P. 37(a). . . . Challenges as to inadequate disclosure of expert witness(es) must be made no later than thirty days before the discovery deadline or will be deemed waived.

Tanger argues that C70 never made any suggestion that Tanger's multiple expert disclosures were insufficient under either Fed. R. Civ. P. 26(a) or L.U. Civ. R. 26 until well after the discovery deadline and just two days before the dispositive and Daubert motions deadline.[6] As such, Tanger argues that its challenges to the adequacy of the disclosures have been waived.

Moreover, even if objections to the adequacy of the disclosures were not waived by C70 in failing to raise them in compliance with Local rule 26(a)(3), Tanger asserts, much like C70 itself—that is, in conclusory fashion—that it has provided defendants all of the information required of specially retained experts under Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi), namely in the form

---

[5] The undersigned notes that this contention appears not in a reply memo by C70 made in response to Plaintiff's opposition to the motion to strike (as no reply was in fact filed), but in the memo supporting the motion itself—a motion, which as explained above, apparently came as a complete surprise to Tanger's counsel who was awaiting, when it was filed, a response to his email to arrange the taking of a deposition of Mason. Accordingly, it is difficult to conceive how C70's counsel would reasonable know *what* Tanger might offer relevant to these factors, to include for example, "the explanation, if any, for the party's alleged failure to comply with the disclosure requirements." *See Geiserman*, 893 F.2d at 791.
[6] Of note, it is not contended that C70's motion to strike [171] is made pursuant to Daubert.

of Mason's Façade Due Diligence Report dated November 16, 2021, and Repair Observation Report dated January 19, 2023, and the third Mason report inadvertently (and mistakenly) produced late, but still well within the discovery deadline and within sufficient time for defendants expert to file its own supplemental report. And, as for C70's contention that the Mason disclosures do not include a list of his publications for the past ten years or any prior testimony in other cases within the last four years, Tanger argues that is because he has not authored any publications, nor has he ever testified as an expert at trial or been deposed as an expert. [195] at 11.

Moreover, Tanger asserts that to the extent C70 complains it did not have the opportunity to take the deposition of Mason ( who itself referenced as "essential" heretofore[7] ) before the discovery deadline ran due to his having become seriously ill in May of 2024, it is notable that C70 never noticed the deposition of Mason before or after his illness was announced in May 2024, and did not respond to Tanger's effort in September 2024 to itself schedule his deposition upon his expected recovery in October 2024. In short, Tanger asserts C70's complaints of prejudice are unfounded under the circumstances here.

## Analysis

Though discovery in this long pending, multi-party construction case has no doubt resulted in extensive and complicated reports of experts, the issue before the Court today is decidedly not so complicated. As to the issue of whether C70 has waived its challenges to the sufficiency of Tanger's multiple expert disclosures of Mason under Fed. R. Civ. P. 26 due to its failure to timely raise them, the rule is quite clear, as Local Rule 26(a)(3) states:

> Failure to Disclose. If a party fails to make a disclosure required by [Local Rule 26], any other party must move to compel disclosure and for appropriate sanctions under Fed. R. Civ. P. 37(a) .... Challenges as to inadequate disclosure of expert witness(es) must be made no later than thirty days before the discovery deadline or *will be deemed waived*.

---

[7] *See* Joint Motion to Reset Trial [146] at 2.

11

L.U. Civ. R. 26(a)(3) (emphasis added).

Moreover, not only is the rule plain, but the reason for its having been adopted in the Northern and Southern District Courts of Mississippi is due to its inherent fairness.[8] And C70's counsel's failure to have addressed the rule in its lengthy recitation of both rule Fed. R. Civ. P. 26 and L.U. Civ. R. 26(a)(3) in its 27-page memorandum or by way of reply brief is concerning. This is particularly so in light of the fact that this rule has routinely been enforced in the district courts of Mississippi. *See e.g., Dunigan v. Mississippi Valley State Univ.*, No. 4:19-CV-33-DMB-JMV, 2020 WL 592314, at *1 (N.D. Miss. Feb. 6, 2020), *Taylor v. Walmart Transportation, LLC*, No. 3:20-CV-162-KHJ-LGI, 2021 WL 5935986, at *3 (S.D. Miss. Dec. 15, 2021), *Teeuwissen v. JP Morgan Chase Bank, N.A.*, No. 3:11CV46-TSL-MTP, 2012 WL 1969063, at *3 (S.D. Miss. May 31, 2012).

> As the United States District Court for the Southern District of Mississippi has reasoned:
>
> It obviously would have been helpful for Storr to be more specific. But if ASU believed his disclosures and responses were insufficient, then it was required under the local rules to file a prompt motion to compel. Under Local Rule 26(a)(3), if a party fails to make required disclosures, the other party *must* move to compel disclosure and for appropriate sanctions.... The failure to take immediate action and seek court intervention when a known fact disclosure violation ... occurs will be considered by the by the court in determining the appropriate sanctions to be imposed regarding a subsequent motion filed under FED. R. CIV. P. 37(c). L.U. Civ. R. 26(a)(3) (emphasis added). Moreover, Local Rule 7(b)(2)(C) states that "[a] party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court and time to effectuate the court's order before the discovery deadline.

---

[8] Other district courts in the Fifth Circuit also look upon attempted procedural "gotcha" motions with disfavor. *See Daggs v. Gulf Offshore Logistics, LLC,* 2019 WL 7558135, at *1 (E.D. La. Dec. 12, 2019) ("The Court does not condone the 'gotcha' nature of [plaintiff's] motion. There is no indication that plaintiff's counsel ever followed up with defense counsel to ask that these deficiencies be cured before filing this motion. While the better practice is for a party to provide complete expert disclosures within the court-imposed deadlines, it is also the better practice for counsel to ask opposing counsel for any missing items before filing a motion to exclude an expert on easily remedied technical deficiencies."); *see also Total Rebuild, Inc. v. PHC Fluid Power, L.L.C.*, 2019 WL 4247338, at *3 (W.D. La. Sept. 6, 2019) ("The Court further finds that the filing of the motion is not only untimely, but it also appears to be an attempted procedural 'gotcha' by Defendant.").

*Storr v. Alcorn State Univ.*, 2017 WL 3471191, at *5 (S.D. Miss. Aug. 11, 2017).

Finally, I find that C70 has not demonstrated any actual prejudice from any claimed inadequacy of the disclosure of Mason since a denial of its motion to strike based thereon due to its waiver does not make those expert disclosures any more comprehensive or capable of withstanding a Daubert challenge than they actually are. In other words, unless the district judge finds otherwise, Mason, as an expert, will be limited at trial to offering those facts and opinions that have actually been disclosed and which withstand any Daubert challenge.

## Conclusion

Accordingly, it is hereby ordered that Defendant/Counter-Plaintiff C70 Builders, Inc.'s ("C70") Motion to Strike Reports and Testimony of Jeffrey Mason [171], for insufficient disclosure shall be and is hereby **DENIED.**

**SO ORDERED**, this the 4th day of November, 2024.

*/s/ Jane M. Virden*
**UNITED STATES MAGISTRATE JUDGE**