## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**MID-SOUTH OUTLET SHOPS, LLC**        **PLAINTIFF / COUNTER-DEFENDANT**
**c/o TANGER MANAGEMENT, LLC**

**v.**        **No. 3:21-cv-256-MPM-JMV**

**C70 BUILDERS, INC.**        **DEFENDANT / COUNTER-PLAINTIFF /**
        **THIRD-PARTY PLAINTIFF**

**v.**

**ABG CAULKING CONTRACTORS, INC.,**        **THIRD-PARTY DEFENDANTS**
**and ARTISTIC HARDSCAPES, LLC**

## ORDER

This matter comes before the Court on three separate summary judgment motions: one by Defendant C70 Builders, Inc. [184], one by Third-Party Defendant ABG Caulking Contractors, Inc. [177], and one by Third-Party Defendant Artistic Hardscapes, LLC [175]. The Court, having reviewed the record and having carefully considered the applicable law, is now prepared to rule.

FACTS

This case stems from the allegedly defective construction of a large outdoor mall. In early 2015, Mid-South Outlet Shops, LLC ("Tanger") hired C70 Builders, Inc. ("Contractor") to construct the Tanger Outlet Mall in Southaven, Mississippi. C70 then subcontracted some of that work to ABG Caulking Contractors, Inc. and Artistic Hardscapes, LLC (collectively, "Subcontractors"). After construction was completed later in 2015, the mall began experiencing water intrusion problems. Numerous attempts were made to fix these problems, but none were successful.

1

On November 17, 2021, Tanger sued C70 in the Circuit Court of DeSoto County, Mississippi alleging breach of contract and negligent construction. C70 promptly removed the case to federal court and filed a third-party complaint against ABG and Artistic Hardscapes alleging—in the event Tanger proves any work performed by the subcontractors was defective—breach of contract, breach of warranty, negligence, and indemnity. C70, ABG, and Artistic have all filed motions for summary judgment. This Court will address C70's motion first.

C70'S MOTION

*A. Statute of Limitations*

The first issue is whether the three-year statute of limitations found in Miss. Code Ann. § 15-1-49 (hereinafter, "§49") applies. Tanger sued C70 almost six years after discovering the water intrusion problem, so, if §49's three-year limitation period applies, Tanger's claims are time-barred. Section 49 provides, in relevant part:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.
> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code Ann. § 15-1-49. From the language above, it is clear that the three-year limitation period in §49 is a catch-all limitation that only applies if "no other period of limitation is prescribed." Miss. Code Ann. § 15-1-49(1); *White v. White*, 325 So.3d 666, 676 (Miss. Ct. App. 2020). This is important to keep in mind because, although the Mississippi Supreme Court has often held that the three-year, catch-all statute of limitations applies to both contract and negligence claims, *see, e.g. Bell v. Delta Plaza LLC*, 301 So.3d 742, 745 ¶9 (Miss. Ct. App. 2020) and *McNair v. J.F.M., Inc.*, 323 So.3d 1154, 1157 ¶9 (Miss. Ct. App. 2020), § 49 cannot apply to those types

2

of claims if some other limitation period applies. *See White*, 325 So.3d 666 at 676 (applying longer, ten-year limitation period rather than three-year period of §49). Tanger points this out in its response brief and contends that because this case is a construction defect case, the six-year limitation period found in Miss. Code Ann. § 15-1-41 (hereinafter, "§41") must apply, preempting the application of §49. Thus, the question of whether Tanger's claims are barred by §49's three-year limitation period hinges on whether §41 applies to each of Tanger's claims.

Tanger asserts two claims against C70: breach of contract and negligent construction. The law is abundantly clear that §41 applies to negligent construction claims, *see, e.g. Lampkin v. Thrash*, 81 So.3d 1193 (Miss. Ct. App. 2012), and any argument to the contrary is, at best, weakly founded. Whether §41 also applies to Tanger's breach of contract claim is less clear. Section 41 reads in relevant part:

> No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, and no action may be brought for contribution or indemnity for damages sustained on account of such injury except by prior written agreement providing for such contribution or indemnity, against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.

Miss. Code Ann. § 15-1-41.

In *Air Comfort*, the Mississippi Court of Appeals interpreted §41 as applying only to tort—and not contract—claims. *Air Comfort Sys., Inc. v. Honeywell, Inc.*, 760 So.2d 43 (Miss. Ct. App. 2000). There, the court stated, "The obvious problem for Air Comfort is that what it is seeking are contract damages for an alleged breach, not damages arising out of an injury to person or property." *Id*. at 47-48. The court, after finding that breach of contract damages do not qualify as the required

3

"injury" under §41, went on to hold that §49 rather than §41 applies. *Id*. Although *Air Comfort*

seems to require dismissal of Tanger's breach of contract claim, two Mississippi Supreme Court

cases require otherwise.

In *Reich v. Jesco, Inc.*, the Mississippi Supreme Court came to a different conclusion. 526

So.2d 550 (Miss. 1988). In that case, the court stated:

> Reich next argues that Section 15–1–41 is limited to tort actions, his point being that the present action, at least insofar as it charges breach of warranty, sounds in contract….
>
> There is simply nothing in Section 15–1–41 which turns upon the conceptual barriers between contract and tort deemed so sacred in law school curricula and legal digests, but in few other places. In cases such as this where the content of the manufacturer or contractor's duty is so similar whether that duty be found in the public law or in privately-made law, Reich's argument appears quite vacuous. The statute places a time limitation upon claims arising out of deficiency in design, planning or construction of a building such as the chicken house. An imagination far more vivid than ours is necessary to detect within this language any distinction between deficiencies by reference to a contractual undertaking, including warranties, on the one hand, and deficiency measured by reference to the public tort law, on the other.

*Id*. at 553. Thus, the Mississippi Supreme Court rejected the plaintiff's argument and held that §41

applies to both contract and tort claims. *Id*. Later, the Mississippi Supreme Court reaffirmed this

holding in the case of *Townes v. Rusty Ellis Builder, Inc*, 98 So.3d 1046, 1051 n.11 (Miss. 2012)

(citing *Reich v. Jesco, Inc.*, 526 So.2d 550, 553 (Miss. 1988)). In *Townes*, the court stated that

"[*Reich*] rul[ed] that Section 15–1–41 is not limited to tort claims but also includes contract and

warranty claims." *Id*. Both *Reich* and *Townes* are Mississippi Supreme Court cases, and since the

Mississippi Supreme Court is a higher court than the Mississippi Court of Appeals, its precedent

controls. Therefore, §41 applies to Tanger's breach of contract claim as well, and the three-year

limitations period of §49 is not applicable.

4

*B. Statute of Repose*

Now that it is clear the six-year limit of §41 applies, the next issue is determining when it began to run. Section 41 bars all qualifying claims and reads in pertinent part:

> No action may be brought…more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.

Miss. Code Ann. § 15-1-41. Thus, the six-year time limit of §41 begins to run at the earliest of (1) "written acceptance," (2) "actual occupancy," or (3) "use." *Id*.

Tanger filed its complaint on November 17, 2021. The certificates of substantial completion and occupancy were issued by the project's architect—and the grand opening occurred—just within the six-year time limit on November 20-21, 2015. Many of Tanger's tenants began working on the interiors of their "white-box" rental units as early as October 8, 2015— slightly beyond the six-year mark ("white-box" refers to the blank-shell state of rental units when tenants first receive them). The tenants moved into these white-box units in order to complete construction before the mall opened to the public. The record suggests the tenants did not begin paying rent when they first moved into these unfinished units, though it is not clear when they began paying rent.

C70 argues that the six-year limitation period began to accrue when the tenants moved in because the tenants' presence on the property constituted "actual occupancy…by the owner" under a constructive possession theory. *Id*. In contrast, Tanger argues that occupancy by the tenants is distinct from occupancy "by the owner," as required by §41. *Id*. Tanger also argues that completion of construction is a prerequisite to accrual and that, therefore, the clock did not begin to run until at least November 20, 2015, when the certificate of substantial completion was issued.

*i.* Completion

The Mississippi Supreme Court has stated, "[§41] was intended by the legislature to protect architects, builders and the like who have completed their jobs and who have relinquished access and control of the improvements." *West End Corp. v. Royals*, 450 So.2d 420, 424 (Miss. 1984). Tanger uses this statement, and a statement in the Fifth Circuit case, *Carl E. Woodward, L.L.C. v. Acceptance Indem. Ins. Co.*, 743 F.3d 91, 101-02 (5th Cir. 2014), to argue that a construction project must be completed before §41 can begin to accrue. Since installation, Tanger argues, of the exterior finishes and hardscapes was still underway when tenants first moved into their rental units, the project was not finished, and the accrual period could not have begun at that time. This Court disagrees.

A "completion" requirement is not supported by the text of §41, and no Mississippi court has held that completion of an entire construction project is a required condition precedent for the accrual period of §41 to run. Although the above-quoted statement in *West End* does include the ostensibly limiting modifier, "who have completed their jobs and who have relinquished access and control of the improvements," that statement was made in the context of determining legislative intent. *West End Corp*, 450 So.2d 420 at 424. It was not meant to add an additional requirement to the start of §41's accrual, and, when viewed in context with the rest of the case, it does not support finding "completion" as a prerequisite. *Id*. Indeed, the legislative intent of "protect[ing] architects, builders and the like" is more robustly ensured by not adding an additional accrual-prerequisite that could only serve to delay a builder's six-years-to-safety.

Though the Fifth Circuit has made the dictal statement, "This proposition is also supported by the Mississippi courts' determination that claims arising from construction defects accrue, for statute of limitations purposes, after the construction project has been completed," the cases that

were cited in support of this statement do not actually hold that completion of a construction project is required before §41's accrual period can run. *Carl E. Woodward*, 743 F.3d 91, 101-02 (5th Cir. 2014) (citing *Reich v. Jesco, Inc.*, 526 So.2d 550 (Miss. 1988) and *Lampkin v. Thrash*, 81 So.3d 1193, 1198 (Miss. Ct. App. 2012)). While the Fifth Circuit points out that in both *Reich* and *Lampkin* the accrual period of §41 *did* begin to run after construction was completed, this language does not mean that the completion of construction was a requirement for the accrual period to run. *Carl E. Woodward*, 743 F.3d 91, 101 n.5 (5th Cir. 2014); *Reich v. Jesco, Inc.*, 526 So.2d 550, 552 (Miss. 1988) (focusing on "occupancy or use" as the accrual trigger); *Lampkin v. Thrash*, 81 So.3d 1193, 1198 (Miss. Ct. App. 2012) (finding accrual began when homeowners moved in even though work was still being performed on the home).

Certainly, the completion of a project is almost always a logical prerequisite to an owner's acceptance, occupancy, or use. This Court, however, does not feel comfortable making it a legal one by reading a completion-of-the-project requirement into the text of §41. The statute lists three possible triggers for the accrual period. If the legislature wanted "completion" to be an additional prerequisite for the statute to accrue, it could have included it.

*ii.* Occupancy

Next, Tanger argues that the presence of the tenants did not set off §41's "occupancy" trigger because §41 requires that the occupancy be "by the owner." C70 disagrees and argues that Tanger was constructively occupying the property through its tenants. In support of its argument, C70 cites two Louisiana cases—*Celebration Church, Inc. v. Church Mut. Ins. Co.*, 216 So.3d 1059, 1063 (La. Ct. App. 2016) and *Lauren Plaza Assocs., Ltd. v. Gordon H. Kolb Devs., Inc.*, 853 F. Supp. 941, 943 (E.D. La. 1994). No Mississippi court case has addressed this issue.

7

The relevant portion of §41 reads, "No action may be brought… more than six (6) years after… actual occupancy…by the owner." Miss. Code Ann. § 15-1-41. The Mississippi Supreme Court has stated, "Before we engage in statutory interpretation, we look to the statute to determine whether interpretation is necessary, that is, whether the language is plain, unambiguous, and in need of no interpretation. If so, we need go no further." *Pat Harrison Waterway Dist. v. Cnty. of Lamar*, 185 So.3d 935, 946 (Miss. 2015). "The words of a statute or act should be ascribed their ordinary and usual meaning." *Pearl River Valley Water Supply Dist. v. Hinds County*, 445 So.2d 1330, 1334 (Miss. 1984) (citations omitted). Here, the Court finds that the statute is unambiguous with respect to the "occupancy" element. The plain language of the statute clearly requires the owner to actually occupy the property, and an ordinary person would interpret the statute this way. The term "actual" immediately before "occupancy," and the clause "by the owner" following it leave no room for C70's constructive possession argument. *Cf. State Farm Ins. Co. v. Gay*, 526 So. 2d 534, 537 (Miss. 1988) (quoting *McGehee v. Field*, 2 Miss. Dec. 25 (Miss. 1881), and *Evans v. City of Jackson*, 30 So.2d 315 (Miss. 1947) for the doctrine of *noscitur a sociis*—the meaning of a word can be derived from its associates); *and cf. Pinkton v. State*, 481 So.2d 306, 310 (Miss. 1985) (declining to reduce a portion of a statute to "mere surplusage").

Even beyond the plain meaning of the phrase, this conclusion is supported by the context of §41 as a whole. *See, e.g. State ex rel. Patterson v. Board of Sup'rs of Warren County*, 102 So.2d 198, 210-11 (Miss. 1958) ("The words, phrases, and sentences of a statute are to be understood as used, not in any abstract sense, but with due regard to the context, and in that sense which best harmonizes with all other parts of the statute."). Further into §41, the statute reads, "This limitation shall not apply to any person, firm or corporation in actual possession and control as *owner, tenant or otherwise* of the improvement" Miss. Code Ann. § 15-1-41 (emphasis added). The use of the

8

terms "owner, tenant or otherwise" in the same section of the same statute suggests that the solitary use of the term "owner" two sentences before does not mean "owner or tenant." *Id*.

Although the two Louisiana cases cited by C70 did interpret a Louisiana statute's accrual trigger "occupied by the owner" to also include occupancy by tenants, the Louisiana statute differs from §41 in two key ways. *Celebration Church, Inc. v. Church Mut. Ins. Co.*, 216 So. 3d 1059, 1063 (La. Ct. App. 2016); *Lauren Plaza Assocs., Ltd. v. Gordon H. Kolb Devs., Inc.*, 853 F. Supp. 941, 943 (E.D. La. 1994); La. R.S. § 9:2772. First, the Louisiana statute does not later go on to use "owner" in series with the term it is argued to encompass. La. R.S. § 9:2772. Secondly, the Louisiana statute only has two accrual-triggers: (1) registration and (2) occupancy by the owner. *Id*. Section 41, in contrast, has three, and the third accrual-trigger is "use…by the owner." Miss. Code Ann. § 15-1-41. This third accrual trigger fills a large gap in the Louisiana statute by including instances where an owner might rent a property to a tenant without ever occupying or formally accepting the improvement, thus obviating the need to interpret "owner" as "owner or tenants."

### iii. Use

The third and final accrual trigger of §41 is "use… of such improvement by the owner thereof." *Id*. Following the same procedural framework set out above, the Court's first step is to determine whether "use…of such improvement by the owner" is plain and unambiguous. *Pat Harrison Waterway Dist. v. County of Lamar*, 185 So.3d 935, 946 (Miss. 2015). From the outset, the Court notes that the term "use" is extremely broad and potentially encompasses a wide range of activities. Indeed, a reasonable person could even interpret "use…of such improvement" to include construction of the improvement since the *use* of an improvement which is under construction is usually necessary for its continued construction. Construction, however, cannot fall

9

within the ambit of "use" in §41 because that would lead to the absurd result of the accrual period beginning right after construction starts, rendering the other two triggers superfluous. The term "use," then, appears ambiguous, and the Court will have to take a closer look to determine its intended meaning.

The definitions of "use" in *Webster's Third New International Dictionary* that best fit its application in §41 are:

 2 : to put into action or service [;] have recourse to or enjoyment of[;] employee [;] exercise

7 : to benefit from the use of.

*Webster's Third New Int'l Dictionary* 2523-24 (1971); *cf. Jones County School District v. Covington County School District*, 352 So. 3d 1123 (Miss. 2022) (also relying on *Webster's Third New International Dictionary* to interpret a statutory term). Thus, we can see that deriving a benefit is a key element of the term "use" in the context of §41. Arguably, however, a benefit is derived from an improvement as the improvement is being constructed, and as was shown earlier, construction cannot fall within the scope of "use" in §41 without completely nullifying the intended starting point of the statute's limitation period. A workable and appropriate definition for "use" in this context, and one that avoids the problems accompanying construction, is: "to derive a benefit from the improvement that is separate from the benefit received from construction."

Applying this definition to the facts of our case, the tenants' moving into their rental units on or before October 8, 2015, does not qualify as "use" under §41. When the tenants moved into their white-box units and began construction, Tanger received no benefit beyond construction which it had already been receiving from C70 and its subcontractors since the beginning of the project. Tanger was not *using* the incomplete outlet mall. If the tenants had been paying rent at that time, then Tanger certainly would have been using the improvement because they would have been

10

deriving a direct benefit from it that is separate from the benefit of construction. The record, however, suggests that tenants did not begin paying rent until much later. Therefore, the "use" accrual trigger of §41 was not satisfied, and Tanger's claims are not time-barred by §41's limitation period.

*C. Causation and Damages*

C70's final argument is that Tanger's claims should be dismissed for failure to claim the required elements of causation and damages. Regarding damages, C70 argues that since damages are a required element of both negligence and breach of contract claims, and since Tanger has not given a definite dollar amount for the damages it allegedly suffered, Tanger's claims must be dismissed. C70 cites no law to support this contention, and this Court is unaware of any. Regardless, Tanger has presented sufficiently definite evidence supporting its damages claim, and the appropriate extent of damages in this case is a genuine issue of material fact.

C70 also argues that Tanger "has not supplied sufficient evidence to create a genuine dispute of material fact as to whether the water intrusions were caused by the allegedly defective work of C70 or its subcontractors." C70's Rebuttal Mem., [200] (emphasis removed). It is undisputed that C70 is responsible for the construction of the Tanger Outlet Mall. It is also undisputed that when it rains water ends up inside the outlet mall. No party suggests that the mall was designed to allow rain inside. Tanger contends this water intrusion problem was caused by faulty construction and has produced extensive evidence to support this. At best, there is a genuine issue of material fact as to who is responsible for the water inside the mall.

11

SUBCONTRACTORS' MOTION

The only issues remaining are the summary judgment motions of Third-Party Defendants Artistic Hardscapes [175] and ABG Caulking [177]. Revisiting the parties and their relationships: Tanger (the owner/plaintiff) is suing C70 (the contractor/defendant) claiming that C70 is responsible for the entire, defective construction project. C70, in turn, is suing Artistic and ABG (the subcontractors/third-party defendants) claiming, if C70 is found responsible for any defective construction, the subcontractors are responsible for any portion of that defective work attributable to them. The subcontractors have moved for summary judgment, and C70 has responded.

The summary judgment motions by Artistic Hardscapes and ABG Caulking are substantially the same. They both argue that all claims against them should be dismissed because no evidence has been presented connecting them to the negligent construction of the mall. Their argument is aptly summarized by Artistic's statement, "There are two (2) pathways by which [summary judgment can be avoided]: either Tanger could advance proof of Artistic Hardscapes' breach of contract/negligent workmanship, or C70 could. In this case, neither has occurred."

C70, in its two-page response brief wholly bereft of authority, expressly agrees with this contention and states that "C70 does not believe that Tanger has demonstrated (or can demonstrate) that any allegedly defective work by C70 or its subcontractors was the cause of Tanger's claimed damages." C70 goes on to state, as the heart of its argument:

> Accordingly, if this Court finds, as Artistic argues in its Motion for Summary Judgment (and as C70 argues more generally in its Motion for Summary Judgment) that Tanger has failed to present evidence of any allegedly defective work by Artistic, then this Court should grant Artistic's Motion for Summary Judgment and likewise find that C70 is entitled to summary judgment in its favor and against Tanger with respect to Artistic's scope of work. If, however, Tanger introduces evidence in its Opposition to C70's Motion for Summary Judgment that relates to Artistic's scope of work and leads this Court to conclude that a grant of summary

12

> judgment in C70's favor is not appropriate at this time, then this Court should likewise determine that Artistic is not entitled to summary judgment on this indemnity claim.

(C70's Resp. Mems., Nos. 188, 189). Thus, C70 attempts to dodge the subcontractors' summary judgment motions and direct them towards Tanger. Logically, C70's argument has merit. Since C70 is only suing the subcontractors for indemnity on a conditional basis, it is reasonable to expect that the case against the subcontractors should persist as long as C70 can potentially be found liable for work the subcontractors performed. This, however, is not the law.

The Fifth Circuit has stated:

> When the party that did not move for summary judgment bears the burden of proof at trial…the moving party need only point to a lack of evidence on an essential part of the non-moving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden shifts to the non-moving party to show, with competent evidence, the existence of a genuine dispute of material fact. *Id*. at 322-23, 106 S.Ct. 2548.

*Miller v. Michael's Stores, Inc.*, 98 F.4th 211, 215-16 (5th Cir. 2024).

Applying the law to the facts of the case: both Artistic and ABG have satisfied their initial burden by pointing to the absence of evidence. This shifts the burden to the non-movants—either C70 or Tanger—to show that a genuine issue of material fact exists. *Id*. Rather than do this itself, C70 hands the burden off to Tanger with the statement, "If, however, Tanger introduces evidence in its Opposition to C70's Motion for Summary Judgment that … leads this Court to conclude that a grant of summary judgment in C70's favor is not appropriate at this time, then this Court should likewise determine that Artistic is not entitled to summary judgment." Unfortunately for C70, Tanger has no apparent desire to keep the subcontractors in this lawsuit, and Tanger did not produce any evidence in its response brief connecting the subcontractors to the negligent construction of the mall. Although the Court appreciates the difficult situation C70 was faced with and understands that C70 could not defend against the arguments made by the subcontractors without effectively conceding those arguments in its own motion against Tanger, this Court cannot rewrite the

13

summary judgment standard. Since neither Tanger nor C70 has met the required burden, the subcontractors' summary judgment motions must be granted.

CONCLUSION

ACCORDINGLY, Defendant C70 Builders, Inc's Motion for Summary Judgment [184] is **DENIED**; Third-Party Defendant ABG Caulking Contractors, Inc.'s Motion for Summary Judgment [177] is **GRANTED**; and Third-Party Defendant Artistic Hardscapes, LLC's Motion for Summary Judgment [175] is **GRANTED.**

**SO ORDERED** this the 13th day of November, 2024.

 /s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI